**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**CHRISTOPHER TAVORRIS WILKINS,**

**Plaintiff,**

**v.**

**Case No.: 5:25-cv-519-WFJ-PRL**

**UNITED STATES OF AMERICA,**

**Defendant.**

**______________________________/**

# ORDER

THIS CAUSE comes before the Court on Defendant the United States of America's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 27). Mr. Wilkins filed a Response in Opposition (Doc. 30) and a Supplement (Doc. 32). For the reasons stated below, the Defendant's motion to dismiss is granted in part and denied in part.

## I. Background

For the purposes of this motion, the Court accepts Mr. Wilkins's factual allegations as true. Mr. Wilkins arrived at USP Coleman I in April 2022. (Doc. 22-1 at 1). In the summer of 2024, Mr. Wilkins claims that SIS Kincade and SIS Adam Jones discovered that he knew a newly hired BOP officer prior to his incarceration. In September 2024, Mr. Wilkins's cell was raided, his property was seized, and he was taken to the Special Housing Unit ("SHU"). *Id*. While in the SHU, Kincade and Jones "tortured, badgered, and harassed" Mr. Wilkins, "messed with his food," and told him

that they were going to have him transferred to another prison and killed. *Id*. Mr. Wilkins was also denied medical treatment.

On October 15, 2024, Mr. Wilkins and his cellmate "were barbarically assaulted by 9 BOP officers" while inside their cell. *Id*. at 1–2. Mr. Wilkins and his cellmate were talking to an officer about missing legal paperwork when the "officer got annoyed quickly and began acting disrespectfully to the two cellmates." *Id*. at 2. They requested to speak to a SHU Lieutenant, but the officer refused to call one. During a security check about 30 minutes later, the cellmate again asked to speak with a SHU Lieutenant and with the psychology department when two other officers approached the cell. Those officers began "slamming the chow flap … to make it look like the two cellmates were behaving erratically" and "fabricated allegations that [the cellmates] were being disruptive." *Id*. Additional officers were called and the nine officers gathered outside the cell.

The group of officers ordered the cellmates to "cuff up" and Mr. Wilkins claims that they both "immediately complied." *Id*. The officers then sprayed two cans of mace inside the cell through the door slot. The cellmates were "forced to sit in that cell that was filled with chemical agents for 15-20 minutes" before the officers entered the cell and began beating the cellmates. *Id*. Both cellmates were kicked to the ground. Mr. Wilkins was "kicked in the mouth several times and kicked in the side so hard that his rib broke." *Id*. He claims that the officers targeted the right side of his abdomen where

his enlarged kidney[1] is. *Id*. Mr. Wilkins lost consciousness two separate times during the melee after receiving hard blows to his head. Mr. Wilkins claims that the officers used handcuffs as weapons during the attack, used racial slurs, and threatened to kill him.

After the incident, Mr. Wilkins reported his injuries to medical staff, but at least one nurse initially denied him medical attention. *Id*. at 2. Mr. Wilkins claims he suffered a broken 11th rib, a traumatic brain injury, a swollen minimally functioning kidney, lung damage from being sprayed with mace, lacerations, contusions, and abrasions to his face and back, generalized back pain, and mental anguish. *Id*. at 2–3.

On October 18, 2024, three days after the attack, Mr. Wilkins was transferred to FTC Oklahoma City after spending 24 hours in the SHU at USP Coleman I. *Id*. at 3. On November 5, 2024, three weeks after the incident, Mr. Wilkins received two chest x-rays. *Id*. at 3. The first x-ray, or Mr. Wilkins's "chest PA and lateral views," indicated a "suspicion of a nondisplaced hairline fracture of the left posterior 11th rib, age indeterminate" and that a "[m]ore detailed evaluation can be performed by dedicated left rib series exam." (Doc. 22-2 at 5–6). The second x-ray of "left ribs" indicated that there was "[n]o radiographic evidence for acute left rib fracture, with attention to the left 11th rib." (Doc. 22-2 at 8).

---

[1] Mr. Wilkins lost his left kidney following a January 8, 2005 shooting. (Doc 22-1 at 1). He suffers from chronic hydronephrosis in the right kidney, which causes it to swell. *Id*. Mr. Wilkins claims that his hydronephrosis has not been monitored since 2020.

On November 27, 2024, Mr. Wilkins arrived at USP McCreary and was sent "straight to the SHU" where he remained until his next transfer roughly a month and a half later. (Doc. 22-1 at 3). Mr. Wilkins claims that the conditions at USP McCreary were inhumane. *Id*. at 3–4. Over the next several months, Mr. Wilkins was transferred to numerous times. On January 16, 2025, he arrived at FTC Oklahoma City. From January 27-30, he was at USP Lewisburg. On January 30, he was sent to USP Canaan and was sent directly to the SHU. On March 13, he was sent back to USP Lewisburg. On April 1, he was sent back to FTC Oklahoma. On April 16, he arrived at USP Big Sandy. *Id*. at 4. Mr. Wilkins believes he was transferred to "especially violent prisons as a way to scare him into staying mum about the officers that assaulted him." *Id*.

Mr. Wilkins submitted, to the Federal Bureau of Prisons, an Administrative Tort Claim, on the SF-95 form, alleging unnecessary use of force, which was denied on June 12, 2025.[2] (Doc. 27-7 at 1–2). Plaintiff's Second Amended Complaint sues the United States under the Federal Tort Claims Act. (Doc. 22). Plaintiff generally claims that employees of the United States used excessive, unnecessary force and he was injured from that force. *Id*. Plaintiff further claims that BOP Health Services has refused to provide him medical treatment, except for ibuprofen which damages his kidney, for the injuries he suffered. *Id*. Defendant moves to dismiss Plaintiff's Second Amended Complaint. (Doc. 27). Defendant argues that (1) Plaintiff's use of force

[2] A copy of Administrative Tort Claim Number TRT-SER-2025-02562 is not attached to the Second Amended Complaint, Supplement or Motion to Dismiss. Therefore, it is unclear if Plaintiff presented his medical negligence claim in TRT-SER-2025-02562. However, the United States does not move to dismiss the medical negligence claim for failure to exhaust as required by 28 U.S.C. § 2675(a).

claim fails to state a claim because the United States has not waived its immunity for constitutional tort claims; (2) Florida law does not recognize claims for negligent use of force; (3) Plaintiff's claim for assault or battery cannot overcome the presumption of good faith afforded to correctional officers when made in the context of use of force to restrain a prisoner; (4) and Plaintiff's medical negligence claim fails to comply with Florida law concerning presuit investigations. *Id*.

## II. Standard of Review

A complaint withstands dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration should be limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## III. Analysis

### A. *Pro se* litigants

A *pro se* prisoner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). And we "must look beyond the labels of motions filed by *pro se* inmates to interpret

them under whatever statute would provide relief." *Means v. Alabama*, 209 F.3d 1241, 1242 (11th Cir. 2000) (per curiam); *see also Andrews v. United States*, 373 U.S. 334, 337–38 (1963) ("[A]djudication upon the underlying merits of claims is not hampered by reliance upon the titles petitioners put upon their documents." (quotation omitted)). This practice acknowledges the importance of allowing meritorious claims to be heard and decided regardless of mere pleading defects introduced by legally unsophisticated litigants. *Zelaya v. Sec'y, Florida Dep't of Corr.*, 798 F.3d 1360, 1366 (11th Cir. 2015).

**B. Federal Tort Claims Act ("FTCA")**

The FTCA provides a limited waiver of the United States' sovereign immunity for tort claims. *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994). "It allows the government to be sued by certain parties under certain circumstances...." *Id.* A federal court may not exercise jurisdiction over a lawsuit brought pursuant to the FTCA unless a plaintiff has first exhausted his administrative remedies pursuant to 28 U.S.C. § 2675(a). *See Dalrymple v. U.S.*, 460 F.3d 1318, 1324 (11th Cir. 2006); *Suarez*, 22 F.3d at 1065. Section 2675(a) prohibits a plaintiff from bringing claims against the United States for money damages or personal injury caused by the negligent or wrongful acts of a government employee "unless the claimant shall have first presented the claim to the appropriate Federal agency and this claim shall have been finally denied by the agency…." 28 U.S.C. § 2675(a). "The administrative tort claim must be filed within two years from the time the claim accrues. If a claimant fails to timely file an administrative claim pursuant to the FTCA, their claim is forever barred." *Cruz v.*

*U.S.*, 522 F. App'x 635, 637 (11th Cir. 2013) (citations omitted) (emphasis added); *see also Walker v. United States*, 196 F. App'x, 774, 776 (11th Cir. 2006).

**C. Battery Claim**

Mr. Wilkins's FTCA tort claim is against the United States which, as a sovereign entity is immune from suit without the consent of Congress. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA represents a limited congressional waiver of sovereign immunity for injury or loss caused by the "negligent or wrongful act or omission" of a government employee "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA addresses violations of state law by federal employees, not federal constitutional claims. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994) (explaining a "constitutional tort claim is not 'cognizable' under § 1346(b)" because the source of substantive liability under the FTCA is state law, not federal law).

Negligent infliction of battery, or the negligent infliction of an intentional tort, is not cognizable. Such a theory would result in dismissal for failure to state a claim. The FTCA provides that the "United States may be held liable for the negligent conduct of its employees 'in the same manner and to the same extent as a private individual under like circumstances.'" *Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081, 1083 (11th Cir. 2004) (quoting 28 U.S.C. § 2674). As a result, the Court must

look to the law of the jurisdiction in which the wrongs are alleged to have occurred, which undisputedly is the state of Florida.

Mr. Wilkins's second amended complaint appears to bring a claim for negligent use of excessive force against the United States under the FTCA. Mr. Wilkins premises his claim on "staff negligence" of the BOP officers that "brutally attacked" him. (Doc. 22 at 7). He claims that the officers were not entitled to use force in this instance. (Doc. 22-1 at 1–2). Rather, he appears to assert that the officers negligently used such force by doing so after they fabricated allegations against Mr. Wilkins and his cellmate, and he was accordingly injured. *Id*. However, "Florida law does not recognize a cause of action for negligent use of force in making an arrest." *Diaz v. United States*, No. 17-61171-CV, 2018 WL 1886573, at *2 (S.D. Fla. Jan. 18, 2018) (citing *City of Miami v. Ross*, 695 So. 2d 486, 487 (Fla. 3d DCA 1997)); *see also Estate of Osorio v. Miami-Dade Cty.*, No. 16-20200-CIV, 2016 WL 9526401, at *2 (S.D. Fla. Oct. 28, 2016); *Landsman v. City of Vero Beach*, No. 13-14375-CIV, 2013 WL 12077480, at *4 (S.D. Fla. Dec. 12, 2013); *Southerland v. Carey*, No. 3:11-cv-1193- J-37MCR, 2013 WL 1912716, at *6 (M.D. Fla. May 9, 2013). "Florida law does not recognize such a claim because 'there is no such thing as negligent commission of an intentional tort.'" *Diaz*, 2018 WL 1886573, at *2 (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 2d DCA 1996)). This Circuit has also found that "it is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009). Instead, excessive force claims by their very

nature require intentional conduct, and thus lie, if at all, in the realm of battery. *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) (citations omitted).

Viewed in a way to state a cause of action, and considering the favorable leeway given to the work product of *pro se* plaintiffs, the fairest reading of the complaint for Mr. Wilkins is that it states a cause of action against the United States under the FTCA for battery. The FTCA provides that plaintiffs may bring claims of "assault [and] battery" for "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h); *see Millbrook v. United States*, 569 U.S. 50, 57 (2013) (holding the FTCA extends to intentional torts committed by law enforcement officials where the alleged conduct "arise[s] within the scope of their employment"). A battery is "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005).

However, in the context of a correctional officer, a plaintiff's claim for battery when made in the context of a use of force to restrain a prisoner, must first overcome the presumption of good faith afforded to an officer's use of force, whereby a corrections officer is only liable for damages if the force used is found to be clearly excessive. *See Sanders*, 672 So. 2d at 47 (applying standards from a similar Florida statute pertaining to law enforcement). Florida Statute section 944.35 provides, in pertinent part, that a government correctional officer "is authorized to apply physical force upon an inmate...to the extent that it reasonably appears necessary...[t]o prevent damage to property; [t]o quell a disturbance; or [t]o overcome physical resistance to a

lawful command...." Fla. Stat. § 944.35(a). Florida has a similar statute authorizing the use of non-deadly force by private correctional officers to, among other things, "defend oneself or others against physical assault," "prevent serious damage to property," and "enforce institutional regulations and orders." Fla. Stat. § 944.105(4).

Here, however, Mr. Wilkins alleges that the BOP officers fabricated a disturbance and he and his cellmate complied with order to "cuff up." (Doc. 22-1 at 2). After both Mr. Wilkins and his cellmate were in hand restraints, the BOP officers sprayed two cans of mace into the cell and forced the inmates to stay in the cell for 15-20 minutes. *Id*. Despite the inmates complying with orders and having been incapacitated by the mace, the BOP officers then entered the cell and attacked the inmates. *Id*. Therefore, Plaintiff has claimed that the BOP officers' actions were not proportionate to the need and were not a good faith effort to maintain or restore discipline under the circumstances but was unnecessary and excessive. Therefore, Defendant is not entitled to dismissal of the battery claim.

**D. Medical Negligence**

Mr. Wilkins claims that despite his numerous injuries he sustained from the attack by the BOP officers, he has received minimal, if any, medical treatment. He claims that the only treatment he received was "a unauthorize medication of ibuprofen" that caused damage to his "only kidney." (Doc. 22 at 5). Because Mr. Wilkins claims he did not receive medical treatment following the attack at USP Coleman I, in Sumterville, Florida, the Court must apply Florida law. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). Under Florida law,

> before filing any claim for personal injury or wrongful death arising from medical malpractice, the claimant [must] conduct an investigation of the claim and send the defendant(s) a notice of intent to sue, along with a corroborating opinion by a medical expert. Fla. Stat. § 766.203(2) (2005). Attorneys must file with the claim a certificate of counsel, verifying that they have conducted a reasonable investigation and that there is a basis for a good faith belief that medical negligence occurred. Fla. Stat. § 766.104 (2005). The Florida Supreme Court has made clear that these requirements are prerequisites to suit, but not jurisdictional. *Kukral v. Mekras*, 679 So. 2d 278, 283 (Fla.1996). Therefore, while Florida law mandates the dismissal of a claim that was filed before these prerequisites were met, Fla. Stat. § 766.206(2) (2005), the claimant may cure the default and proceed with the suit as long as the pre-suit requirements are fulfilled within the applicable statute of limitations. *Kukral*, 679 So.2d at 283.

*Johnson v. McNeil*, 278 F. App'x 866, 871 (11th Cir. 2008).

Mr. Wilkins has not demonstrated that he has complied with Florida's medical negligence law prior to bringing the present FTCA medical negligence claim. In his response to the Motion to Dismiss, Mr. Wilkins explains that he has included his BOP medical records to show that he was injured and properly submitted his tort claim. *See* Doc. 30 at 9–10. However, he fails to establish that he has obtained or included the required medical expert opinion. Because Mr. Wilkins did not fully comply with Florida's pre-suit notice requirements for medical negligence claims, the Defendant is entitled to dismissal of the medical negligence claim.

## IV. Conclusion

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 27) is **GRANTED**, in part, and **DENIED**, in part.
    a. The Motion is **GRANTED** regarding Plaintiff's medical negligence claim.
    b. The Motion is **DENIED** regarding Plaintiff's battery claim.
2. Within 21 days, Defendant must file an answer or otherwise respond to the battery claim in Plaintiff's Second Amended Complaint.

**DONE** and **ORDERED** at Tampa, Florida, on July 24, 2026.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies furnished to**:
Unrepresented Party
Counsel of Record